RAYMOND P. BOLAÑOS (SBN 142069)
AT&T SERVICES, INC., LEGAL DEP'T
430 Bush Street, 6th Floor
San Francisco, CA 94108
Telephone:  415.268.9491
Facsimile:  415.543.0418
*raymond.bolanos@att.com*

AARON M. SHANK (*Pro Hac Vice Application to be Filed*)
PORTER WRIGHT MORRIS & ARTHUR LLP
41 South High Street, Suites 2800 – 3200
Columbus, Oh 43215
Telephone: 614.227.2110
Facsimile:  614.227.2100
*ashank@porterwright.com*

Attorneys for Plaintiff
New Cingular Wireless PCS, LLC d/b/a AT&T Mobility

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| NEW CINGULAR WIRELESS PCS, LLC, D/B/A AT&T MOBILITY, a Delaware limited liability company, <br><br> Plaintiff, <br><br> v. <br><br> COUNTY OF VENTURA, CALIFORNIA, <br><br>       Defendant. | Case No.  2:21-cv-3079 <br><br> **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** <br><br> **AND** <br><br> **REQUEST FOR EXPEDITED REVIEW PURSUANT TO 47 U.S.C. § 332(c)(7)(B)(v)** |

Plaintiff New Cingular Wireless PCS, LLC, d/b/a AT&T Mobility

("AT&T"), a limited liability company organized and existing under the laws of

Delaware, complains against Defendant County of Ventura, California (the

"County") and alleges as follows:

## JURISDICTION AND VENUE

1.      This action arises under the laws of the United States, including the

Communications Act of 1934, as amended by the Telecommunications Act of

1996, 47 U.S.C. §§ 253 and 332 ("Act"). This Court has jurisdiction over these

claims pursuant to 28 U.S.C. §§ 1331 (federal question) and 1337 (commerce). The

Court's authority to grant declaratory relief and related injunctive relief is based

upon 28 U.S.C. §§ 2201-2202, because an actual controversy exists.

2.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because

AT&T's claims stated herein arose in this judicial district.

## INTRODUCTION

3.      AT&T seeks declaratory and injunctive relief based on the County's

denial of AT&T's application for a conditional use permit (the "Application") for

construction, operation, and maintenance of a wireless communications facility, to

be collocated on a replacement utility pole, with panel antennas flush-mounted to a

crossarm on the pole (the "Proposed Facility"). The Proposed Facility is to be

located in the public right-of-way near a highway noise barrier next to U.S. Route

101 at approximately 6671 Old Pacific Highway in Ventura County, California (the

"Site").

4.      Federal law limits the ability of local governments to block installation

of such facilities, based on the nationwide goal of promoting widespread

availability of advanced, reliable wireless services. AT&T has been trying for nearly two years to place the Proposed Facility at the Site, to provide improved wireless service in those parts of the County with inadequate wireless services. The Proposed Facility is needed to close AT&T's significant gap in its wireless service in those areas of the County. The Proposed Facility is the least intrusive means to close that significant gap.

5.     The Proposed Facility will provide and improve important wireless services, including LTE service and FirstNet service (to support first responder communications). AT&T has conducted a comprehensive search for the appropriate site and design of the Proposed Facility. In addition to analyzing alternative properties, AT&T worked closely with County Staff during the application process to identify the appropriate location, as well as design options for the Site.

6.     At the request of the County Planning Commission, AT&T undertook a second review of alternative sites, engaged with community members, and worked with County Staff to identify any less intrusive locations or better designs for the Proposed Facility. Through that process, AT&T and County Staff verified that the Site was the best available, and the only viable site for AT&T to close the significant service coverage gap. AT&T also agreed to design changes from County Staff, including a shorter crossarm and additional landscaping.

7.     Based on the strength of AT&T's Application and the location and design of the Proposed Facility, County Staff recommended approval of AT&T's Application, and the County Planning Director approved the Application.

8.     Despite the Planning Director's approval and County Staff's continued support, the County entertained an untimely appeal of the Planning Director's

approval and, ultimately, denied AT&T's Application, after three additional public hearings, over a period of an additional year and a half.

9.     The County's denial of AT&T's Application violated Sections 253 and 332 of the Federal Communications Act of 1934, as amended by the Telecommunications Act of 1996 (the "Act"), 47 U.S.C. §§ 253, 332. These provisions limit the power of local governments to regulate deployment of telecommunications and personal wireless service facilities. These provisions also forbid local governments from denying applications without substantial evidence; forbid local governments from acting in a manner that may prohibit or have the effect of prohibiting telecommunications and personal wireless services; and forbid discriminatory treatment in processing applications for such facilities.

10.     The County's denial effectively prohibits AT&T's installation of telecommunications and personal wireless service facilities and the provision of services and is not supported by substantial evidence in the written record, in violation of federal law. The County has also unreasonably discriminated against AT&T by denying the Application despite having previously approved a substantially similar application from one of AT&T's competitors providing functionally equivalent services. The County has also abused its discretion in denying AT&T's Application, and its actions were arbitrary and capricious.

**PARTIES**

11.     Plaintiff AT&T is a limited liability company duly organized, existing, and operating under the laws of Delaware, with its principal place of business in Atlanta, Georgia, and with offices at locations throughout California. At all times relevant herein, AT&T has been and is qualified to do business in California.

AT&T is a wireless telecommunications carrier that provides personal wireless services within the meaning of the Act.

12.    Ventura County is a California political subdivision organized and existing under the laws of the State of California.

### NATURE OF THE CASE

13.    By this action, AT&T seeks declaratory and injunctive relief in the form of an order compelling the County to issue forthwith a conditional use permit and all other necessary approvals and authorizations to construct, operate, and maintain the Proposed Facility.

14.    The declaratory and injunctive relief requested herein is necessary and appropriate because the County has violated the Act by effectively prohibiting AT&T from providing telecommunications services and personal wireless services in the County.

### THE TELECOMMUNICATIONS ACT

15.    "Congress enacted the Telecommunications Act of 1996 (TCA), 110 Stat. 56, to promote competition and higher quality telecommunications services and encourage the rapid deployment of new telecommunications. *City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 115 (2005). "One of the means by which [Congress] sought to accomplish these goals was reduction of the impediments imposed by local governments upon the installation of facilities for wireless communications, such as antenna towers." *Id*. In an effort to prioritize and streamline deployment of wireless technologies on a national basis, the Act restricts the authority of state and local governments to regulate "placement, construction, and modification of personal wireless service facilities" (47 U.S.C. § 332(c)(7)(B)).

**Effective Prohibition**

16.     The Act significantly limits state and local governments from regulating the provision of personal wireless and telecommunications services. Under 47 U.S.C. § 253 ("Section 253"), "[n]o State or local statute or regulation, or other State or local legal requirement, may prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service." Similarly, 47 U.S.C. § 332(c)(7)(B)(i)(II) prohibits a local government from denying an application for a wireless telecommunications facility when doing so would "prohibit or have the effect of prohibiting" the provision of wireless telecommunications services.

17.     An effective prohibition under 47 U.S.C. §§ 253 or 332(c)(7) occurs whenever a decision of a local government "materially inhibits" wireless services. *In the Matter of California Payphone Assoc. Petition for Preemption, Etc*., Opinion and Order, 12 FCC Rcd. 14191 (FCC rel. July 17, 1997).

18     A "state or local legal requirement which "materially limits" or "inhibits" the ability of "any competitor or potential competitor to compete in a fair and balanced legal and regulatory environment," amounts to an effective prohibition. *Accelerating Wireless Broadband Deployment by Removing Barriers to Infrastructure Investment,* Declaratory Ruling and Third Report and Order, FCC 18-133, 30 FCC Rcd 9088 (September 27, 2018) ("*Infrastructure Order*"), ¶ 35. The Ninth Circuit has recently reaffirmed this material inhibition standard. *See generally, City of Portland v. United States*, 969 F.3d 1020 (9th Cir. 2020).

19.     An effective prohibition analysis "focuses on the service the provider wishes to provide, incorporating the capabilities and performance characteristics it

wishes to employ, including facilities deployment to provide existing services more robustly, or at a better level of quality." *Infrastructure Order*, at n.95. Thus, a local government "could materially inhibit service in numerous ways – not only by rendering a service provider unable to provide existing service in a new geographic area or by restricting the entry of a new provider in providing service in a particular area, but also by materially inhibiting the introduction of new services or the improvement of existing services." *Infrastructure Order*, ¶ 37.

20.    A wireless carrier may demonstrate an effective prohibition by showing there is a "significant gap" in service and the proposed installation is the "least intrusive means" of closing that gap. *See T-Mobile USA, Inc. v. City of Anacortes*, 572 F.3d 987, 995 (9th Cir. 2009). If there is a "significant gap" in service and the proposed installation is the "least intrusive means" for filling that gap, a local government must grant the permit application. *See* 47 U.S.C. § 332(c)(7)(B)(i)(II).

21.    When a wireless provider presents evidence of a significant gap and the absence of a less intrusive alternative, the burden shifts to the local government to prove that a less intrusive alternative exists. *City of Anacortes*, 572 F.3d at 998-99; *T-Mobile West Corp. v. City of Agoura Hills*, 2010 U.S. Dist. 134329 (C.D. Cal. Dec. 20, 2010). To meet this burden, a local government must show that another alternative is available that fills the significant gap in coverage, that the alternative is technologically feasible, and that it is less intrusive than the proposed facility. *Id.*

**Substantial Evidence Requirement**

22.    State and local governments may only deny an application for a telecommunications facility based on "substantial evidence." 47 U.S.C. §

332(c)(7)(B)(iii). A local government's decision to deny such an application must be "authorized by applicable local regulations and supported by a reasonable amount of evidence." *Metro PCS, Inc. v. City and County of San Francisco*, 400 F.3d 715, 725 (9th Cir. 2005) (*abrogated on other grounds*). Thus, to deny a permit application, a local government must have specific reasons that are both consistent with the local regulations and supported by substantial evidence in the record.

**Unreasonable Discrimination**

23.     The Act also prohibits state and local governments from unreasonably discriminating among providers of functionally equivalent services. 47 U.S.C. § 332(c)(7)(B)(i)(I). A siting authority violates this provision of the Act when other providers of functionally equivalent services have been permitted to construct similar structures at similar sites in the locality. *Metro PCS, Inc.*, 400 F.3d at 727-28.

## FACTUAL BACKGROUND

**AT&T's Need for the Proposed Facility**

24.     AT&T provides personal wireless services to its customers throughout the area relevant to this Complaint pursuant to frequency licenses issued by the FCC. When AT&T identifies a significant gap in its wireless service coverage, AT&T investigates the nature and extent of the need for improvement and identifies ways to close that gap.

25.     AT&T has a significant service coverage gap in the County in the vicinity of the Proposed Facility. AT&T has demonstrated this significant service coverage gap in the County's administrative proceedings by submitting coverage maps, a Radio Frequency Statement, and other record evidence.

26.     AT&T's service coverage gap is significant because the area includes hundreds of homes in Mussel Shoals and La Conchita, a hotel, a two and a half mile span of Highway 101, a fire station, beaches and recreation areas, and other points of interest in the immediate vicinity.

27.     AT&T needs to construct the Proposed Facility to provide and improve service to this portion of the County. The radio frequency propagation maps submitted with AT&T's application depict the service coverage gap AT&T is experiencing throughout this portion of Ventura County. These maps and other evidence in the record show that AT&T lacks adequate wireless service in this portion of the County and also explain how the Proposed Facility will address that gap. The Radio Frequency Statement explains that the "site is part of an effort to fully deploy 4G LTE technology in the area. Specifically, the proposed facility will close [a] service coverage gap and provide sufficient 4G LTE coverage for AT&T customers in the affected area."

28.     The Proposed Facility will also enhance first responder communications by providing new FirstNet services. FirstNet is the federal First Responder Network Authority, a nationwide dedicated wireless communications network for first responders. The Proposed Facility is an important part of AT&T's commitment to support public safety, and it will provide coverage and capacity for deployment of FirstNet.

29.     To close the service gap and to provide these services, AT&T proposes to install a wireless communications facility, with panel antennas flush-mounted to the crossarm of a replacement utility pole, in the public right-of-way near a highway noise barrier near U.S Route 101, and adjacent to a parking area.

**AT&T's Analysis of Alternatives**

30.     AT&T thoroughly investigated alternative sites and designs to ensure its Proposed Facility was the best available and least intrusive means for closing the service coverage gap. AT&T's analyses of alternatives were submitted to the County in connection with the Application, along with additional details about the search for alternative locations, which were presented at hearings before the Ventura County Planning Director, Ventura County Planning Commission, and Ventura County Board of Supervisors.

31.     Section 8175-5.20 of the Ventura County Coastal Zoning Ordinance ("CZO") establishes development standards and location preferences for wireless communication facilities in coastal areas in Ventura County. CZO Section 8175-5.20.3(d) identifies facilities in preferred locations as the highest priority for siting. CZO Section 8175-5.20.3(e)(2) describes one type of preferred location as those sites with facilities "[f]lush-mounted on an existing structure, pole, or building when located in the COS, CA and CM zones." CZO Section 8172-1 defines "Wireless Communication Facility, Stealth" as "[a] wireless communication facility that blends into the surrounding visual setting" and specifically includes "Panel antennas flush-mounted on existing utility facilities." "Photo 4" in the CZO definitions depicts a facility very similar to the Proposed Facility, as an example of a stealth facility. County Staff has consistently identified the Proposed Facility as a "stealth facility" under the CZO.

32.     The Proposed Facility qualifies as a stealth facility and a preferred solution, because the Site is in a COS zone and the panel antennas will be flush-mounted to the utility pole.

-10-       Complaint for Declaratory and Injunctive Relief
                                                    and Request for Expedited Review

33.     CZO Section 8175-5.20.10(j) requires an applicant to submit an alternative sites analysis for non-stealth facilities or facilities proposed outside of preferred locations. Consequently, and as County Staff has explained, AT&T was not required to provide an alternative sites analysis.

34.     Though not required, AT&T nevertheless prepared and submitted an alternative site analysis with its Application. AT&T also increased its effort to identify alternative sites in response to requests from the County and the community, and even submitted a second alternative sites analysis. At the Planning Commission's request, AT&T worked with County Staff, held a community meeting, and fully reanalyzed alternatives for the Proposed Facility. AT&T then completed and submitted its updated alternative sites analysis, included as Exhibit 6 to the County Planning Commission Staff Report for the November 19, 2020 Planning Commission hearing.

35.     AT&T's alternative sites analyses show that it considered ten (10) candidate locations, and concluded that only the Site was available and feasible for the Proposed Facility, and that the Site presents the only opportunity to close AT&T's significant service coverage gap. Community members preferred a specific alternative site on the opposite side of U.S. Route 101, but County Staff deemed that site a less preferred location, and AT&T radio frequency engineers determined the site would not close AT&T's significant service coverage gap. The Proposed Facility is thus the least intrusive location from which AT&T can close its significant service coverage gap.

///

///

**Application Process and Hearings**

36.     On April 30, 2019, AT&T filed with the County an application for a conditional use permit (the "Application") seeking authorization to construct, operate, and maintain the Proposed Facility. The Application included evidence of AT&T's significant service coverage gap and AT&T's analysis of alternative sites to close that gap by the least intrusive means.

37.     The County did not send AT&T any written notice that the Application was incomplete. On May 14, 2019, the County sent AT&T a letter to advise that the Application was deemed complete.

38.     The Application was scheduled for hearing before the County Planning Director, which was duly noticed and held on August 29, 2019. Ahead of the Planning Director's hearing, County Staff prepared and published a Staff Report ("August 2019 Staff Report"). The August 2019 Staff Report explained that the Application was consistent with the Ventura County General Plan, the Ventura County Coastal Area Plan, the Ventura County Coastal Zoning Code, and the County's Certified Local Coastal Program. The August 2019 Staff Report explained that the Proposed Facility "will not alter the appearance of the site or the character of the land uses in the area," and recommended approval of the Application.

39.     At the August 29, 2019 Planning Director's hearing, AT&T offered evidence regarding how the Proposed Facility was needed to close a significant service coverage gap, and evidence showing that the Proposed Facility was the only viable alternative. Opposition testimony was received from two residents, who

mainly raised concerns about radio frequency emissions and the alleged visual impact of the Proposed Facility.

40.     On October 8, 2019, the County Planning Director issued his decision approving the Application ("Planning Director Approval"). The Planning Director Approval explained AT&T's efforts to identify alternative sites and stated that "No other locations in the vicinity are viable to close the gap in service coverage."

41.     Pursuant to Ventura County Coastal Zoning Code Section 8181-9.2, the time period to bring an appeal from the Planning Director Approval ended ten (10) days after the decision. Thus, the deadline to bring an appeal was October 18, 2019. No appeal was filed by October 18, 2019.

42.     On October 21, 2019, a resident filed an appeal (the "Resident Appeal") of the Planning Director Approval. Despite the lateness of the appeal and the finality of the Planning Director Approval, the County considered the Resident Appeal.

43.     The County significantly delayed bringing the Resident Appeal to hearing before the County Planning Commission, which was finally scheduled for July 30, 2020.

44.     Ahead of the July 30, 2020 Planning Commission hearing, County Staff prepared and published a Staff Report, dated July 2020 ("July 2020 Staff Report"). The July 2020 Staff Report explained that AT&T had analyzed alternative sites and that AT&T confirmed that it had selected the least intrusive means to close the significant service coverage gap. The July 2020 Staff Report also explains that the design of the Proposed Facility is consistent with other existing utility poles and utilities in the area, and that the "design is similar to an

existing WCF located north of the proposed facility." The July 2020 Staff Report analyzed each of several grounds for the Resident appeal, found each to be "without merit," and recommended that the Planning Commission deny the Resident Appeal and approve the Application.

45.     On July 30, 2020, the Planning Commission held a public hearing to consider the Resident Appeal and the Application. The Planning Commission did not consider the appeal at the hearing, but continued the matter and directed County Staff to further analyze the Application, and directed AT&T to work with County Staff and to hold a community meeting to gather input on the Proposed Facility and possible alternatives.

46.     AT&T reevaluated alternative sites in the area to determine whether there were other available sites by which it could close its significant service coverage gap in a less intrusive means than the Proposed Facility. AT&T again could not identify any available, feasible, and less intrusive alternative location for the Proposed Facility.

47.     On October 2, 2020, AT&T met with County Staff at the Site to discuss alternative sites and designs. AT&T and County Staff specifically considered alternative sites across U.S. Route 101 from the Mussel Shoals community. AT&T and Local governments concurred that no alternative sites were feasible or more preferred.

48.     On October 20, 2020, AT&T held a community meeting with interested area residents. Community members in attendance recommended alternative sites and stated that they favored relocating the Proposed Facility across

U.S. Route 101. All potential alternative sites across the highway were infeasible and more intrusive than the Proposed Facility, however.

49.    Following its further analysis of alternatives and meetings with County Staff and residents, AT&T submitted a further analysis of alternative sites. AT&T also agreed to design changes suggested by County Staff, in an effort to make the Proposed Facility less intrusive, including shortening the length of the crossarm of the utility pole housing the antennas, and adding landscaping to screen AT&T's equipment.

50.    Despite AT&T's efforts, community members remained opposed to the Proposed Facility. The Resident Appeal went forward, and the continued Planning Commission public hearing was scheduled for November 19, 2020.

51.    Ahead of the continued Planning Commission hearing, County Staff prepared and published a Staff Report, dated November 2020 ("November 2020 Staff Report"). The November 2020 Staff Report summarized AT&T's initial and additional efforts to identify alternatives for the Proposed Facility, including meeting with the community and working with County Staff, and described AT&T's design changes as achieving the best available design. The November 2020 Staff Report summarized the community meeting, including community members' "strong preference that the project be sited on the northern/eastern side of Highway 101." County Staff explained that the alternative locations were infeasible and not preferred.

52.    The November 2020 Staff Report explained that under the County Code, AT&T was not obligated to prepare and submit an analysis of alternatives

because the Proposed Facility qualifies as "stealth" and was to be placed in a preferred location under the County Code.

53.    The November 2020 Staff Report explained that AT&T provided an alternative sites analysis "at the request of County staff in order to make certain this was the least intrusive location in the area and the best design within the Coastal Zone." The November 2020 Staff Report recommended that the Planning Commission deny the Resident Appeal and approve AT&T's Application subject to the agreed-upon design changes.

54.    At the conclusion of the November 19, 2020 Planning Commission hearing, the Planning Commission considered a motion to approve the Application, which resulted in a two-to-two tie vote. The Planning Commission next considered a motion to deny the Application, which also resulted in a two-to-two tie vote. The County determined that a tie vote resulted in a failure to act that operated as an effective denial of the Application.

55.    CZO Section 8181-9.4 states that the process on appeal requires that the "decision-making authority shall either approve, deny, or approve with modifications the appeal request." The Resident Appeal did not receive a majority vote, so the Planning Commission failed to act with respect to the appeal. The result of this failed action should have been to affirm or restore the Planning Director's Approval. The County, however, wrongly asserted that the lack of decision operated as an effective denial of the Application.

56.    Based on the County's assertion that the Planning Commission had effectively denied the Application, AT&T filed a timely appeal on November 30, 2020.

57.     The County Board of Supervisors scheduled the appeal hearing for March 9, 2020. Ahead of the Board of Supervisors public hearing on AT&T's Application and appeal from the Planning Commission's decision, County Staff prepared and published a Board Letter dated March 9, 2021 ("March 2021 Board Letter"). The March 2021 Board Letter summarized the Application and recommended action by the Board of Supervisors. The March 2021 Board Letter reiterated many of the points made in the July 2020 Staff Report and the November 2020 Staff Report. Specifically, the March 2021 Board Letter stated that AT&T's Proposed Facility is a stealth facility in a preferred location, that an alternative sites analysis was not required by the County Code, and that AT&T nevertheless prepared multiple alternatives analyses and worked with the community and County Staff on the location and design.

58.     The March 2021 Board Letter states that the Proposed Facility "is the best, feasible site in the vicinity to meet the applicant's coverage needs." The March 2021 Board Letter also states that "Staff has not identified substantial evidence that would support denial of the proposed project." And the March 2021 Board Letter states that "[t]he applicant has demonstrated that a gap in wireless service coverage exists," that "[t]he applicant and staff conducted additional alternative sites analysis at the direction of the Planning Commission," and that "[n]o feasible alternative sites were identified that would meet AT&T's coverage needs." The March 2021 Board Letter also stated that "there is a T-Mobile site with ground-mounted equipment located within the same right-of-way approximately 300 feet from the proposed project site," which was approved in 1999 after residents appealed approval on the basis of visual impact. The March 2021 Board

Letter endorsed the County Staff's recommendation "that the appeal be granted and the project [be] approved."

59.    On March 9, 2021, the Board of Supervisors held a public hearing on AT&T's Application and appeal from the Planning Commission. At the hearing, County Staff presented information and materials in support of AT&T's Application, including a 31-page PowerPoint presentation. The Staff presentation detailed AT&T's analysis of alternative sites and designs, and stated, "Staff believes AT&T has demonstrated the existence of a coverage gap, and that no feasible alternative sites were identified that would meet AT&T's coverage needs that would be preferable to the proposed site under the CZO."

60.    During the March 9, 2021 hearing, AT&T's representative presented the Application, explained the significant service coverage gap, and provided details about the analysis of alternative sites and designs, which identified the Proposed Facility as the least intrusive means to close the gap.

61.    At the conclusion of the March 9, 2021 hearing, the Board of Supervisors voted to deny AT&T's Application.

62.    On March 11, 2021, the Board of Supervisors issued its written Notice of Final Decision denying AT&T's Application ("Denial"). The written Denial provides, in pertinent part:

The motion was to deny the CUP application and related appeal based on applicant's failure to provide substantial evidence establishing that the proposed facility represents the least intrusive means of closing a significant coverage gap in the applicant's service area. In particular, applicant did not provide the information and documentation regarding an alternative site

analysis set forth in Coastal Zoning Ordinance section 8175-5.20.10, subdivision j, and therefore did not meet its burden of proving that the permit approval findings set forth in Coastal Zoning Ordinance section 8181-3.5, subdivisions a. through e., could be made.

63.    The Denial was signed by the County's Planning Manager, Mindy Fogg. Ms. Fogg also reviewed and signed the July 2020 Staff Report and the November 2020 Staff Report, each of which states that the Proposed Facility was necessary to close AT&T's service coverage gap by the least intrusive means.

64.    The County did not identify any alternatives that are available, feasible, and less intrusive than the Proposed Facility.

65.    The County's Denial Resolution is not supported by substantial evidence.

66.    The record does not support the conclusory statement in the Denial that AT&T failed to provide substantial evidence that the Proposed Facility is the least intrusive means to close its significant service coverage gap.

67.    The Denial incorrectly states, "applicant did not provide the information and documentation regarding an alternative site analysis." In fact, AT&T submitted into the administrative record two alternative sites analyses and myriad documents and information which demonstrated that the Proposed Facility is the least intrusive means to close its significant service coverage gap.

68.    The Denial does not identify any alternative that is available, technically feasible, and less intrusive than the Proposed Facility. There are no other available alternative sites on which AT&T can construct the Proposed Facility and remedy the significant gap in coverage.

69.     Because there are no other available sites that AT&T can feasibly construct for the Proposed Facility, and because the County has not identified any available, technically feasible, and less intrusive alternatives by which AT&T can address its significant service coverage gap, the County has effectively prohibited AT&T from providing wireless service to its significant coverage gap.

**FIRST COUNT**
**(Effective Prohibition)**
**(47 U.S.C. §§ 253, 332(c)(7)(B)(i)(II))**

70.     AT&T hereby incorporates by reference the allegations of paragraphs 1 through 69, inclusive, as though fully set forth herein.

71.     AT&T has a gap in service coverage in the vicinity of the Proposed Facility.

72.     AT&T's gap in service coverage in the vicinity of the Proposed Facility is significant.

73.     The Site and the Proposed Facility are the least intrusive means to close AT&T's significant gap in service coverage.

74.     AT&T undertook a thorough, good faith analysis of alternative sites for the Proposed Facility and provided the County with reasoned analysis. AT&T investigated all alternatives suggested by the County and community members, and no other sites were available, technically feasible, and less intrusive than the Proposed Facility.

75.     There is no other available site at which AT&T can construct the Proposed Facility and remedy its significant gap in service coverage.

76.   The County has not identified any available, technically feasible, and less intrusive alternatives by which AT&T can address its significant service coverage gap.

77.   The Proposed Facility would remedy AT&T's significant service coverage gap in the vicinity of the Site by means that are the least intrusive to the values protected by the applicable Ventura County regulations, including the CZO.

78.   The County did not present evidence establishing that AT&T does not have a significant gap in its personal wireless service coverage.

79.   The County did not present evidence establishing that the Site is not the least intrusive means to address AT&T's significant service coverage gap.

80.   The County's decision to deny the Application materially inhibits AT&T from providing and improving wireless services.

81.   The County's decision to deny the Application prohibits or has the effect of prohibiting AT&T from providing personal wireless services in the significant gap area.

82.   Accordingly, the County violated the Act, 47 U.S.C. §§ 253, 332(c)(7)(B)(i)(II).

WHEREFORE, AT&T prays for judgment as set forth below.

## SECOND COUNT
### (Substantial Evidence Requirement)
### (47 U.S.C. § 332(c)(7)(B)(iii))

83.   AT&T hereby incorporates by reference the allegations of paragraphs 1 through 82, inclusive, as though fully set forth herein.

84.   The Application for the Proposed Facility satisfied all of the criteria set forth in the applicable Ventura County regulations, including the CZO.

85.     AT&T presented evidence to the County justifying the need for the Proposed Facility, as well as the need for a Conditional Use Permit.

86.     The lone stated basis for denial – the lack of an alternative sites analysis – is clearly and unequivocally contradicted by the administrative record, including County Staff's published reports and analyses of the Application.

87.     The County's decision to deny the Application was not supported by substantial evidence contained in a written record as required by Section 332(c)(7)(B)(iii).

88.     Accordingly, the County violated the Act, 47 U.S.C. § 332(c)(7)(B)(iii).

WHEREFORE, AT&T prays for judgment as set forth below.

### THIRD COUNT
### (Unreasonable Discrimination)
### (47 U.S.C. § 332(c)(7)(B)(i)(I))

89.     AT&T hereby incorporates by reference the allegations of paragraphs 1 through 88, inclusive, as though fully set forth herein.

90.     The Act, 47 U.S.C. § 332(c)(7)(B)(i)(I), prohibits a local authority from unreasonably discriminating among providers of functionally equivalent services. AT&T is a wireless telecommunications carrier that provides telecommunications services and personal wireless services within the meaning of the Act.

91.     Consistent with the CZO, AT&T's Application proposes to install the Proposed Facility on a utility pole in the public right-of-way along Old Pacific Coast Highway and near U.S. Route 101. In the past, the County has granted T-Mobile, a functionally equivalent service provider to AT&T, a permit to construct a

similar wireless communications facility at a similar location about 300 feet away in the same right-of-way.

92.     The County does not have a reasonable basis for treating AT&T differently in this instance.

93.     Without any reasonable or lawful basis, the County treated AT&T differently than T-Mobile, a competing provider of functionally equivalent services, which violates the Act.

WHEREFORE, AT&T prays for judgment as set forth below.

## REQUEST FOR EXPEDITED REVIEW

94.     AT&T hereby incorporates by reference the allegations of paragraphs 1 through 93, inclusive, as though fully set forth herein.

95.     The Act, 47 U.S.C. § 332(c)(7)(B)(v), provides:

Any person adversely affected by any final action or failure to act by a State or local government or any instrumentality thereof that is inconsistent with this subparagraph may, within 30 days after such action or failure to act, commence an action in any court of competent jurisdiction. The court shall hear and decide such action on an expedited basis.

96.     AT&T has been adversely affected by the County's denial of AT&T's Application to construct the Proposed Facility. AT&T respectfully requests a hearing and decision by the Court on an expedited basis as provided by the Act.

WHEREFORE, AT&T prays for judgment as set forth below.

///

///

///

# PRAYER FOR RELIEF

WHEREFORE, AT&T prays for relief against the County as follows:

1.     For a declaration and judgment that the County's denial has effectively prohibited AT&T from closing a significant coverage gap in the provision of wireless service in violation of 47 U.S.C. §§ 253, 332(c)(7)(B)(i)(II);

2.     For a declaration and judgment that the County violated Section 332(c)(7)(B)(iii) of the Act because denial of the Application was not supported by substantial evidence contained in a written record;

3.     For a declaration and judgment that the County's denial has unreasonably discriminated against AT&T in violation of the Act, 47 U.S.C. § 332(c)(7)(B)(i)(I);

4.     For a declaration and judgment that AT&T is entitled to approval of the Proposed Facility pursuant to its Application;

5.     For a declaration and judgment that the County's actions are preempted by the Telecommunications Act of 1996 and are therefore void and invalid;

6.     For an order mandating the following:

(a) that the County grant forthwith AT&T's Conditional Use Permit consistent with AT&T's Application;

(b) that the County grant forthwith all other authorizations necessary for construction of the Proposed Facility; and

(c) that the County grant forthwith final approval of the permits for construction of the Proposed Facility;

7.      For expedited review of the matters set forth in this Complaint, as required by federal law;

8.      For an award of AT&T's costs of suit herein; and

9.      For such other and further relief as the Court may deem just and proper.

Dated:  April 8, 2021                    AT&T SERVICES, INC. LEGAL DEPT.

                                         /s/   Raymond P. Bolaños
                                    By: _____
                                         Raymond P. Bolaños
                                         Attorneys for Plaintiff
                                         430 Bush Street, 6th Floor
                                         San Francisco, CA 94108